BAYOU LANDING, LTD., d/b/a the
Florida Book Mart,
Plaintiff-Appellant,

v.

Edgar WATTS et al.,
Defendants-Appellees.

OUZA, INC., d/b/a the Palace Book Mart,
Excalibur Books, Inc., d/b/a the Palace
Book Store, Plaintiffs-Appellants,

v.

Edgar WATTS, Jr., et al.,
Defendants-Appellees.

Nos. 75–3632, 75–4436.

United States Court of Appeals,
Fifth Circuit.

Nov. 28, 1977.

Rehearing Denied Jan. 5, 1978.

---

Glen Zell, Atlanta, Ga., for Bayou Landing Ltd.

Gilbert H. Deitch, Robt. E. Smith, Michael Clutter, Atlanta, Ga., for plaintiffs-appellants in No. 75–4436.

Joseph F. Keogh, Parish Atty., Baton Rouge, La., for defendants-appellees.

Before MORGAN and RONEY, Circuit Judges, and KING, District Judge.*

* District Judge for the Southern District of Florida, sitting by designation.

**1174**

MORGAN, Circuit Judge:

In these § 1983[1] cases, the owners of so-called adult bookstores challenged on first amendment grounds certain actions of the city-parish council of Baton Rouge and East Baton Rouge Parish, Louisiana. In No. 75–4436 (hereinafter *Ouza*), the council, spurred by the arrest of two bookstore employees on obscenity charges, revoked the occupational licenses under which an adult bookstore had been operating. In No. 75–3632 (hereinafter *Bayou Landing*), the council directed that the permanent occupancy permit for an adult bookstore be withheld, because residents of the area around the bookstore had objected to the visual displays in the windows of the store.

The district court dismissed both actions. In *Ouza* the court held in favor of the defendant-appellees[2] at the close of the bookstore owners' case. The court expressed the view that the appellants had failed to make a prima facie case. In *Bayou Landing*, the court sustained the appel-lees' position after an evidentiary hearing at which periodicals allegedly similar to those sold at the bookstore were introduced. The court ruled from the bench[3] that the materials were not protected by the first amendment.

We reverse.

I

*Bayou Landing*

In August, 1975, the city-parish council directed the local building official to withhold issuance of an occupancy permit for 3919 Florida Boulevard in Baton Rouge. Appellant Bayou Landing, Ltd. had been operating an adult bookstore at the location under temporary authority.

The record is barren of any explanation for the council's action except for the text of the resolution passed by the council ordering that the permit be withheld:

RESOLUTION 5583

AUTHORIZING AND DIRECTING THE BUILDING OFFICIAL TO WITHHOLD

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983.

2. The appellees in both cases are members of the city-parish council and officials of the district attorney's office.

3. The district court stated:
   [W]hen the plaintiff says that the burden of proof is on the defendants, that burden of proof has been met by the introduction as evidence into this hearing of materials that are so filthy, absolutely filthy, that it almost makes me puke—and I hope the reporter can spell that.
   It has got to be the product of depraved, perverted minds that would even look at it, let alone try to sell it. And I can understand why the plaintiff did not take the witness stand to try to defend what they are doing in this case. I'm sure they would have been ashamed to have done so. They did not. If they wouldn't have been ashamed to have done so, they ought to be incarcerated some place that would be suitable for them.
   As far as prior restraint is concerned, no prior restraining is involved. I don't even believe that Justice Douglas would say that this is protected by the First Amendment. This is the filthiest, nastiest stuff that you can imagine. And if the City Officials did not take steps to try to put these people out of business, they ought to be impeached. As a matter of fact, I think they ought to maybe set up a separate community for people like that and put them all together where they could enjoy each other's company, instead of letting them just pollute the whole city and state and neighborhood with this kind of stuff. This is almost unbelievable. Its got to be somebody that is perverted from head to feet to try to put this stuff any place in public.
   I don't know what else I can say, except that this is so filthy that I will have to order the Clerk to seal this evidence because I could not have it on conscience to have that kind of evidence even available for the grown-up adult members of the Clerk of Court's office to have to see. And this evidence will be sealed, so if the Court of Appeals would like to see it, they can have an opportunity to see it, if this case has to be reviewed, but it certainly is not going to be open to the public; and it's not going to be open to the members of my court; they are not going to have to look at it, to file or anything else. It will be in an envelope under seal. It's just that filthy—and I'm not a prude, but this is the worst and is as bad as you could ever imagine.
   Record 83–84.

THE ISSUANCE OF AN OCCUPANCY PERMIT FOR THE PROPOSED USE OF THE BUILDING LOCATED AT 3919 FLORIDA BOULEVARD, BEING LOT 36, SQUARE 3, LOFASO TOWN.

WHEREAS, an application has been received requesting a permit for operation of a business enterprise designated as a book store in the building located at 3919 Florida Boulevard, being Lot 36, Square 3, Lofaso Town; and

WHEREAS, because of the visual advertisements on display in the front windows of these premises, it is felt that the type of business activity contemplated is unsuitable for location in a residential community and area such as the one in which this building is situated, and the residents and property owners in the area have formally opposed the establishment of such business concern as contemplated; and

WHEREAS, this Council believes it would be in the best public interest to withhold the issuance of an occupancy permit at this location for the proposed use:

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Baton Rouge that the Building Official is hereby authorized and directed to withhold the issuance of an occupancy permit for the proposed use of the building located at 3919 Florida Boulevard, being Lot 36, Square 3, Lofaso Town, in the City of Baton Rouge.

Record 68.

Since the resolution arguably trenches on the plaintiff's first amendment rights it is for the defendant to justify it. *See Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The defendant seeks to do this first, by claiming that it is in the nature of a zoning ordinance. A city clearly can provide that certain establishments may only operate in specified neighborhoods, or must be located a specified distance from each other, even in a first amendment context. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Zoning, however, connotes a non-particularized legislative process in which rules are promulgated and land areas designated on a general, prospective basis. 101 C.J.S. Zoning § 1 ("Zoning regulations are legislative, rather than judicial, in character"). Here, there are strong indications that the resolution was not a zoning ordinance. The resolution was directed at only one business, instead of being of general applicability, even though "rezoning on a piecemeal or spot basis is highly suspect." *Four States Realty Co., Inc. v. City of Baton Rouge,* 309 So.2d 659, 672 (La.1975). *See also* 101 C.J.S. Zoning § 34. The resolution was not prospective, but instead acted to penalize that establishment *after* it became known that it was selling certain material. Furthermore, it recites as one of the reasons for its passage that "residents and property owners in the area have formally opposed the establishment of such business concern as contemplated." This reliance on public distaste for certain activities, instead of on legislative determinations concerning public health and safety again indicates that we are not dealing with zoning. In addition, the defendants have not cited any statute, ordinance, or other source defining "unsuitable for location in a residential community." At oral argument, counsel for defendants stated that the city council was authorized to act to protect the public interest. These standards for restraining the dissemination of materials such as books, magazines, and films—all of which are presumed protected by the first amendment—plainly cannot pass constitutional muster.[4] The standards would permit the government to suppress protected expression solely because the residents of the community disapproved of the content of the expression or

---

4. *Interstate Circuit v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968) (and cases cited).

were offended by it.[5] We also note that it was stipulated by the parties that "other establishments in the area selling the same type of material were given occupancy certificates and are in fact doing business in the City of Baton Rouge." There has been no explanation, in a zoning context, as to why the plaintiff business was singled out for unique treatment.

■ The ordinance at issue is also sought to be justified on general police power grounds. For instance, it recites as a reason for the refusal of a permit "the visual advertisements on display in the front windows of these premises." While a governmental body might properly refuse to license some businesses because of their window advertisements, in the first amendment context it must be sure that "the restrictions are no greater than necessary or essential to the protection of the governmental interests." *Baldwin v. Redwood City*, 540 F.2d 1360, 1365 (9th Cir. 1976). *See Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 91, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). Here, if the true problem was plaintiff's advertisements, surely the city could have commanded that those be removed without so heavily intruding on the first amendment as it did when it refused to allow the bookstore to operate.

■ Thus "[i]f the ordinance is to be sustained, it must be on the basis of the [city's] interest in regulating the content of the communication, and not on any interest in regulating the form." *Linmark Associates, supra*, 431 U.S. at 94, 97 S.Ct. at 1619. However, the resolution at issue cannot even be justified as straightforward administrative censorship. The Supreme Court has required that "regulations of obscenity scrupulously embody the most rigorous procedural safeguards . . . ." *Blount v. Rizzi*, 400 U.S. 410, 416, 91 S.Ct. 423, 428, 27 L.Ed.2d 498 (1971); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). There were no such

safeguards in the instant case. Although the defendant argues that a public hearing was held before the resolution in question was adopted, such a mechanism merely enhances the opportunity of the majority to suppress distasteful but protected expression. The procedures envisioned by the Supreme Court are of more judicial nature.

■ Finally, the council action is not saved by the district court's ruling from the bench that the materials sold at the bookstore were obscene. First, the materials examined by the district court were not even from the Bayou Landing store in Baton Rouge, but were purchased in Jefferson Parish. Since there is a difference between pornography and obscenity, while the material from one store might be obscene the material from the other might be protected. Second, the obligation of seeking a judicial determination of the protected or unprotected categorization of literature must be placed on the government, and the government must allow a free trade in material presumed protected until it demonstrates in court that the materials are obscene. *See Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

We thus conclude that the plaintiff was entitled to the relief requested in No. 3632.

## II

### *Ouza*

■ In October, 1975, the council revoked the occupational licenses that had been granted to Ouza, Inc., and Excalibur Books, Inc., for a bookstore on Plank Road in Baton Rouge. The events leading to the revocation began with the arrest of two of the bookstore's employees on obscenity charges. The district attorney for the parish wrote to the council, recommending that the store's operating authority be revoked because, in view of the arrests, revocation was necessary "to protect the public interest." Record 28. The parish clerk then sent appellants each a letter notifying them of a

---

5. *See, e. g., Ergoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). We note that the council's action was not predicated on any carefully drawn zoning

ordinance of the sort at issue in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

hearing regarding the district attorney's recommendation. A copy of the district attorney's letter was sent along with—and incorporated by reference into—the parish clerk's letter. The clerk's letter also stated that a basis for the proposed revocation was violation of the Louisiana obscenity statute.[6] A hearing was held by the council—in closed session at the request of appellants—and after the hearing the council passed a resolution [7] revoking appellants' licenses.

**6.** The clerk's letter also advised appellants of alleged violations of a Louisiana statute regulating licensees of establishments selling intoxicating beverages, but the parties stipulated that this allegation was groundless. Record 62.

**7.** RESOLUTION 5653

AUTHORIZING AND DIRECTING THE TREASURER OF THE CITY OF BATON ROUGE AND PARISH OF EAST BATON ROUGE TO REVOKE AND SET ASIDE THE OCCUPATIONAL LICENSES ISSUED TO OUZA, INC., d/b/a THE PALACE BOOK MART, 5511 PLANK ROAD, BATON ROUGE, LOUISIANA, THROUGH ITS PRESIDENT, GERALD MATHENY, 267 MARIETTA, N.W., ATLANTA, GEORGIA AND EXCALEBAR BOOKS, INC., d/b/a THE PALACE BOOK STORE, 5511 PLANK ROAD, BATON ROUGE, LOUISIANA, THROUGH RALPH MITCHUM, 267 MARIETTA, N.W., ATLANTA, GEORGIA PURSUANT TO THE PROVISIONS OF TITLE 9, CHAPTER 1, PART III, SECTION 62, SUBSECTION (e), OF THE BATON ROUGE CITY CODE AND THE CODE OF ORDINANCES OF THE PARISH OF EAST BATON ROUGE.

WHEREAS, the District Attorney of the Parish of East Baton Rouge has determined that the public interest of the Parish of East Baton Rouge requires the revocation of the occupational 'licenses of Ouza, Inc., d/b/a The Palace Book Mart, 5511 Plank Road, Baton Rouge, Louisiana, through its president, Gerald Matheny, 267 Marietta, N.W., Atlanta, Georgia and Excalebar Books, Inc., d/b/a The Palace Book Store, 5511 Plank Road, Baton Rouge, Louisiana, through Ralph Mitchum, 267 Marietta, N.W., Atlanta, Georgia, the specific grounds for such determination being as follows:

Title 9, Chapter 1, Part III. Section 62, Subsection (e) of the Baton Rouge City Code, as follows:

(1) Fraud, misrepresentation and false statements in application for said license, to wit: Engaged in unlawful activities on the licensed premises in violation of authority under said license, namely,

(a) Violation of La.R.S. 14:106.

(5) Permitting acts prohibited by La.R.S. 26:285 on the licensed premises, to-wit:

After putting the above facts before the district court in the form of stipulations or documentary evidence, appellants rested, being of the view that they had made out a prima facie case. The district court disagreed, dismissing the case at the close of appellants' evidence. The court stated:

Whether or not the obscenity laws of the State of Louisiana or the Parish of East Baton Rouge have been violated by the plaintiffs cannot be determined by this Court absent evidence on that issue.

2. Permitting obscenity, lewd, immoral, and/or improper entertainment, conduct, and practices of the licensed premises as described in Section (a) above.

(7) After a finding and recommendation by the District Attorney that revocation of the license be deemed necessary to protect the public interest based on the following:

(b) above

Section (a) above.

and,

WHEREAS, following a hearing conducted in executive session of the City Council of the City of Baton Rouge at the option and request of Ronald Tanel, Attorney for Ouza, Inc., d/b/a The Palace Book Mart, and Excalebar Books, Inc., d/b/a The Palace Book Store, pursuant to notice of such hearing by personal service, by first class United States Mail, and by registered mail notifying the said occupational license holders of such public hearing, it is the determination of this Council that the occupational license of Ouza, Inc., d/b/a The Palace Book Mart, 5511 Plank Road, Baton Rouge, Louisiana, through its president, Gerald Matheny, 267 Marietta, N.W., Atlanta, Georgia and Excalebar Books, Inc., d/b/a The Palace Book Store, 5511 Plank Road, Baton Rouge, Louisiana, through Ralph Mitchum, 267 Marietta, N.W., Atlanta, Georgia, should be revoked.

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Baton Rouge that the Treasurer of the City of Baton Rouge and Parish of East Baton Rou[g]e is hereby authorized and directed to revoke and set aside the occupational licenses issued to Ouza, Inc., d/b/a The Palace Book Mart, 5511 Plank Road, Baton Rouge, Louisiana, through its President, Gerald Matheny, 267 Marietta, N.W., Atlanta, Georgia and Excalebar Books, Inc., d/b/a The Palace Book Store, 5511 Plank Road, Baton Rouge, Louisiana, through Ralph Mitchum, 267 Marietta, N.W., Atlanta, Georgia, pursuant to the provisions of Title 9, Chapter 1, Part III, Section 62, Subsection (e), of the Baton Rouge City Code and the Code of Ordinances of the Parish of East Baton Rouge. Record 23–24.

Plaintiffs have seen fit to rest their case without the presentation of any evidence pertaining to the issue of obscenity . . . Since the burden is upon the plaintiffs to prove their case by a preponderance of the evidence, and since the plaintiffs have failed or refused to present any evidence on the question of obscenity to this Court:

IT IS ORDERED that the plaintiffs' motion for a preliminary and permanent injunction and for declaratory judgment in its favor in this case be, and it is hereby DENIED, and this case is hereby DISMISSED.

Record 65–66.

We are at a loss to understand what sort of evidence the district court thought it incumbent upon the bookstore owners to present "on the issue of obscenity." The purport of the court's opinion is that the materials are presumed obscene. On the contrary, once a plaintiff shows that the government has restrained dissemination of materials *presumed* protected by the first amendment and introduces evidence tending to show that the restraint was based on the content of the materials, then the burden shifts to the government officials to demonstrate that any restraint imposed comported with the substantive and procedural requirements of the first amendment.[8]

### III

The judgment in No. 75–3632 is reversed with the direction that the district court grant injunctive relief. The judgment in No. 75–4436 is reversed and the cause remanded for proceedings consistent with this opinion.[9]

REVERSED.

---

8. *Cf. Freedman v. Maryland,* 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (system of prior restraints of expression comes to court bearing heavy presumption against constitutional validity); *Bazaar v. Fortune,* 476 F.2d 570, 573 (5th Cir.), *modified on other grounds,* 489 F.2d 225 (5th Cir. 1973) (en banc), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974) (incumbent upon university to justify censorship it sought to impose on student publication).

9. In both of these cases, appellants raise serious questions about the constitutionality of the procedures used by the city council in light of *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct.

734, 13 L.Ed.2d 649 (1965), and, more recently, *Blount v. Rizzi,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). Specifically, appellants argue that the city council should be judged by the same standard as an administrative censor, so that the procedural safeguards set out in *Freedman* and *Blount* should be mandated for council action. We have at least once before declined the opportunity to address similar questions, *106 Forsyth Corp. v. Bishop,* 482 F.2d 280 (5th Cir. 1973), *cert. denied,* 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1975). Because of the view we take of the instant cases, the *Freedman-Blount* issues again can await a later day.