Hausmann & Johnson, Inc., et al., Appellees, v. Berea Bd. of Bldg. Code Appeals, Appellant.
Dibenedetto et al., Appellees, v. Jenkins et al., Appellants.

[Cite as Hausmann & Johnson v. Board (1974), 40 Ohio App. 2d 432.]

(Nos. 32590 and 32591—Decided June 24, 1974.)

*Mr. Howard W. Broadbent*, for appellees.
*Mr. Frank Seth Hurd*, for appellants.

Day, J. These are companion cases. Because parties are interwoven and the issues in both cases are identical, we shall treat them as one case for the purpose of this opinion. Hereafter, the Hausmann & Johnson, Dibenedetto/Visconsi group, who were jointly involved as plain-

tiffs in the proceedings below, will be called the "appel-lees'"[1], and the City of Berea and its officials, who were defendants in the court below and appellants in this court, will be called collectively the "appellants". Case No. 32590 was appealed to the Court of Common Pleas after running the course of administrative procedure in the City of Berea, including an appeal to the Board of Zoning and Building Code Appeals, resulting in the denial of a permit application sought for the construction of a McDonald's restaurant. The second case, No. 32591, reached Common Pleas Court by way of a complaint for declaratory judgment and equitable relief. The appellees were successful in the court below. The court ordered the issuance of a building permit in accordance with the appellees' application and found for them in the declaratory judgment action.

In the trial court in Case No. 902,329 the parties stipulated an "Agreed Statement of Facts." This stipulation together with the pleadings and attachments provided the record for the Common Pleas Court's review of the appeal from the Board of Zoning and Building Code Appeals. An identical stipulation of facts, the pleadings and attachments were the basis for the court's decision on the complaint for declaratory judgment in Case No. 902,330.

The two cases are now before this court to review the

[1]For clarity at some places in the text of the opinion, it will be necessary to refer to the "appellee" plus the proper name. In order that such identifications be complete it is noted here that Spartico Dibenedetto and D. A. Visconsi are the owners of real estate which was rezoned by the City of Berea to 2-B-1 permitting retail businesses, including restaurants, Ordinance 1963-75. Franchise Realty Interstate Corporation, also an appellee, is alleged to be the holder of an option to purchase the rezoned real estate, and it is further alleged that Hausmann & Johnson, Inc., are the agents of and general contractors for Franchise Realty Interstate Corp. (See Complaint, paragraphs 1 and 3 in Case No. 902,330 in the Common Pleas Court. The answer admits the ownership allegation and denies the remaining part of paragraph 1 for lack of knowledge, admits the allegation in paragraph 3 describing the location of the property, and denies rezoning to Class 2-B-1. However, the rezoning is conceded as part of an agreed statement of facts between counsel. The agency of Hausmann & Johnson, Inc., "acting for the appellants" in seeking permission for construction of a McDonald's restaurant is also admitted.)

trial court's actions on the administrative appeal and on the motion for declaratory judgment.[2]

## I.

Appellant assigns two errors. We set them out verbatim:

*Assignment of Error No. 1:*

"The Court in Finding for the Plaintiff on the Declaratory Judgment Action Based on the Stipulation of Facts, Erred Said Ruling by the Court Being Contrary to Law [sic]."

*Assignment of Error No. 2:*

"The Court Erred as a Matter of Law in Reversing the Decision of the Building Commissioner et al and Ordering Permit to be Issued."

Behind these assignments of error lies one issue, and that is, whether a rezoning ordinance can be limited constitutionally by an agreement providing that any petition for a *rezoning* must be accompanied by the petitioner's consent to the proposition that if the property is not used within twelve months in the manner the rezoning allows, it immediately reverts to its former more restrictive use category. The source of the claimed reversionary "agreement"

---

[2]We have indicated in the text that Case No. 32590 in this court is the appeal from the decision in favor of appellees (in Common Pleas Case No. 902,329) involving an appeal to Common Pleas Court from the Board of Zoning and Building Code Appeals of the City of Berea and that Case No. 32591 in this court is the appeal from a finding for appellees in their action for declaratory relief. The latter case was No. 902,330 in Common Pleas Court. Appellants argued that the appeal of the action of the Board of Zoning and Building Code Appeals could not be considered either in the Common Pleas Court or here for lack of a record. This argument proceeds from the premise that a secretary's report of unsworn proceedings before the Board of Zoning and Building Code Appeals is not a record. See *Arcaro Bros. Builders Inc.* v. *Zoning Board of Appeals* (1966), 7 Ohio St. 2d 32; *Doelker* v. *Accountancy Bd.* (1967), 12 Ohio St. 2d 76; *Capello* v. *Mayfield Heights* (1971), 27 Ohio St. 2d 1. Whatever the merits of this argument might be in the absence of the "Agreed Statement of Facts" reached in this case, that agreement cures the omission both in the Court of Common Pleas and here.

in the present case is another ordinance[3] in force for more than twenty years before the[4] rezoning now in issue took place (see Agreed Statement of Facts).

## II.

In Ohio, municipal zoning is an aspect of both local self-government and legislatively granted police power, *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 637-638. Municipal authority to zone stems from the Ohio Constitution, Article XVIII, Section 3, which provides:

''Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

and from the statutes, *Pritz* v. *Messer, id.* 637. Statutory implementation of zoning authority in non-charter cities is delineated in Ohio Revised Code, Sections 713.01-713.13, as amended, cf. *Morris* v. *Roseman* (1954), 162 Ohio St. 447, 450; *Wintersville* v. *Sales Co.* (1973), 35 Ohio St. 2d 148, 152. Those sections also regulate zoning authority in char-

---

[3]Ordinance Number 627—"Section XXV. Amendments. (a) It is a further provision of Ordinance Number 627 with any amendments thereto, that should any person or persons, firm, partnership, corporation or legal entity petition or request rezoning of property or properties to a less restrictive use than the one at the time restricting such property or properties, that such person or persons, firm, partnership, corporation or legal entity shall state in such petition or request his, their or its reason for seeking a less restrictive use and further agree that within 12 months it will be so used and for no other purpose or purposes, use or uses, and agree that if not so used, said property or properties shall immediately and automatically revert to its former use. Such consent shall be given in open Council meeting and recorded as a minute thereon." (Effective October 20, 1941.)

This case does *not* involve "unconditional" zoning accompanied by, but ostensibly not involving, a side contract with conditions for improvements to be made by the property owner.

[4]The rezoning for which reversion is claimed in the present case was not a comprehensive rezoning in the sense of a planned land use program for a whole community. A single tract belonging to the appellees was rezoned in 1964. The ordinance requiring a reversionary agreement has been in effect since October 20, 1941 (see footnote 3, *supra*).

ter cities when "the charter does not specifically set forth the procedure to be followed in enacting zoning ordinances." *State, ex rel. Kling,* v. *Nielson* (1957), 103 Ohio App. 60, 62. The Ohio Constitution, Article XVIII, Section 3, which extends the power of local self-government and local police regulation to municipalities, does not limit Sections 713.01-713.13. See *Sanders* v. *Snyder* (1960), 113 Ohio App. 370, 373-374. However, a municipality may, by charter provision, enlarge the local police power, without limitation from the statutory sections,[5] *Bauman* v. *State, ex rel. Underwood* (1930), 122 Ohio St. 269.[6]

Berea, Ohio, is a charter city. Its charter does set the procedures for enacting zoning ordinances (Berea Charter, Section X) and the council has legislated extensive zoning, including the reversionary ordinance (see footnote 3, *supra*)[7] so crucial in this case. Because the parties make no point of the lack of a specific agreement nor raise any issue about a council minute recording one, as the reversionary ordinance requires, we pass this point and treat the ordinance as though it effected an agreement and reach the more vital issue in the case, i. e., whether such agreements are valid.

### III.

Appellees Spartico Dibenedetto and D. A. Visconsi Company own real estate on the north side of Bagley Road in the City of Berea, Ohio. The area which the property occupies and *no more* was rezoned from residential to com-

[5]Cf. Ohio Revised Code, §713.14:

"Sections 713.06 to 713.12, inclusive, of the Revised Code do not repeal, reduce, or modify any power granted by law or charter to any municipal corporation or the legislative authority thereof, or impair or restrict the power of any municipal corporation under Article XVIII cf the Ohio Constitution * * *."

[6]"* * * Section 4366-12, General Code [Ohio Revised Code §713.14], yields unrestricted powers to municipalities in respect to zoning, if such powers are granted by the municipal charter." *Bauman* v. *State, ex rel. Underwood, id.* 270 (bracketed material added).

[7]Chapter One of Title One of Part Ten of the Codified Ordinances of the City of Berea. The reversionary ordinance is Section XXV of Ordinance Number 627 and apparently was not repealed by the adoption of Title One of Part Ten. Cf. Section 2, page 209, of that title where a part of Ordinance 627, not relating to reversion was repealed.

mercial on the owner's application.[8] Thereafter, the denial of appellees' application for a building permit went through the procedural steps necessary to exhaust the administrative remedies. These were without success and the case was appealed to Common Pleas Court where it became coupled with a complaint for declaratory judgment as described at the beginning of this opinion.

The appellants contend that the reversionary clause in Ordinance No. 627, Section XXV, is a matter of substantive law well within the constitutional zoning power of municipal corporations. They purport to find one instructive analogy in the concept of the "conditional permit variance" and another in the variance with conditions.[9] Appellee rejects these arguments contending that conditional rezoning authorizes automatic repeal of the rezoning ordinance and reenactment of the *status quo ante* in disregard of procedure required by law.

## IV.

The Ohio Constitution and implementing statutes which have a relevance to zoning do not reach, either in specific terms or by necessary implication, the question of rezoning with reversionary conditions. And our researches have turned up no Ohio case, and none has been called to our attention by the parties, which has ever determined the validity of a reversionary agreement attached to a successful petition for rezoning.[10] However, other states have had occasion to examine the question and there is authority with impressive logic holding that such contractual conditions are not enforceable.

---

[8] See footnote 1. The appellants in their brief, page 1, assert that Appellees Dibenedetto and the Visconsi Company made the successful application for rezoning and these appellees do not meet the assertion by a denial. Instead, they argue the legal effect of conditional zoning.

[9] See appellant's brief, pp. 7-8; see also Anderson, 3 American Law of Zoning, 33, Section 14.56 *et seq.*, and especially Section 15.61 and Reps, Legal and Administrative Aspects of Conditional Zoning Variances and Exceptions, 2 Syracuse L. Rev., 54, 55-68, 1950-1951.

[10] *Fox* v. *Shriver-Allison* (1971), 28 Ohio App. 2d 175, 181-182, implicitly disapproved a variance conditioned upon a maximum time limit of five years for the sole benefit of the applicant. The present case presents a different problem.

In some cases it is said that a reversionary contract between a city and landowners involves an abuse of zoning power rendering the contract *ultra vires,* illegal, and void and all proceedings to enforce it are *coram non judice.* This conclusion rests on the theory that a contract controlling the exercise of municipal legislative power is against public policy. Contracts "have no place in a zoning plan" and agreements "between a municipal authority and a property owner" should not be a factor either "in the enactment or enforcement of zoning regulations", *Houston Petroleum Co.* v. *Automotive Product C. Assn.* (S. Ct., New Jersey, 1952), 87 A. 2d 319, 322.[11] In *Oury* v. *Greany* (S. Ct., Rhode Island, 1970), 267 A. 2d 700, 702, conditional zoning was held to be zoning "without regard to the public health. safety and welfare, concern for which is basic to that comprehensiveness contemplated in the enabling act".[12] In addition to these considerations it has been held that zoning based solely on collateral promises improperly leaves restrictions in a particular zone to extrinsic evidence, *Baylis* v. *City of Baltimore* (Ct. of App., Md., 1959), 148 A. 2d 429, 433.[13]

Authorities which reach identical conclusions are not always uniform in their reasons for holding invalid a rezoning conditioned upon the property owner fulfilling an agreement between the municipality and him.[14] A variety of explanations are conveniently catalogued in *Cederberg* v. *City of Rockford* (Ill. App., 1972, rehearing denied 1973), 291 N. E. 2d 249, 251:

[11]In *Houston Petroleum,* two property owners were grantees of different portions of a tract subject to the rezoning agreement. One sued to compel the city to enforce the agreement against the other.

[12]The record in the present case does not supply the facts to determine whether a comprehensive rezoning plan preceded the rezoning in issue, but see footnote 7. Comprehensive land use planning is so patently the purpose of zoning regulations that we assume that objective for the Ohio constitutional and legislative scheme.

[13]See also *Hartnett* v. *Austin* (S. Ct. of Fla., 1956), 93 So. 2d 86, 88-90; *Andres* v. *Village of Flossmoor* (Ill. App., 1973), 304 N. E. 2d 700, 704-705. *Church* v. *Town of Islip* (Ct. of App., N. Y., 1960), 168 N. E. 2d 680, 682-683, may be read as a contrary view.

[14]If the sole purpose of an ordinance is the effectuation of an invalid reversion by operation of law, as in the present case, the ordinance itself is invalid.

". . . While no single basis for the rule against such zoning practices emerges from the cases cited, among the courts' reasons are that by entering into agreement with the property owner, the zoning authority might use the zoning power to further private interests in violation of public policy; that such rezoning is a deviation from a basic zoning plan resulting in nonuniform application of the zoning law and inconsistencies within a zoning classification; that when the actual zoning requirements in force are determined by reference to evidence extrinsic to the zoning ordinances, the zoning law is rendered vague."

Granting that the legislative decision of a governing authority has a presumption of validity, the reasons listed are persuasive ones for overcoming the presumption and finding the restrictions and reversion which the appellants attempted to enforce in this case invalid. Accordingly, we affirm the judgment of the trial court.

The parties here have made no point of either the presence or absence of a specific reversionary agreement between Appellant Berea and the appellees. We do not assay the legal consequences, if any, of the absence of such a contract. We have assumed a reversionary agreement was effected here by operation of law. Our disposition embraces the broad proposition that reversionary agreements attempting to condition zoning by contract, however derived, are invalid.

### V.

The appellants did not brief the issue of the validity of a moratorium resolution of the City of Berea and abandoned their reliance on the moratorium during oral argument. For this reason it is unnecessary to consider any phase of the assignments of error centering on that resolution.[15]

*Judgment affirmed.*

CORRIGAN and MANOS, JJ., concur.

---

[15]The moratorium resolution was Resolution 1970-22 providing: "A moratorium on the issuance of permits for drive-in establishments, including carry-out and drive-in restaurants, to be located adjacent to residential areas, be adopted until the enactment of the new zoning code."